UNITED STATES *v.* CITY OF ALEXANDRIA and another.

*(Circuit Court, E. D. Virginia.* February 7, 1884.)

1. PUBLIC STATUTES—CONSTRUCTIVE NOTICE OF PROVISIONS.
   Public statutes affect, with constructive notice of their provisions, all the world, including domestic states as well as individuals.
2. SAME—ACT OF CONGRESS—CERTAINTY—STATUTE OF LIMITATIONS.
   But where an act of congress provided that all the shares held in a canal company by a city (A.) should be delivered to the secretary of treasury, not naming the number of shares intended, and that within 10 years the secretary should sell the shares to satisfy a trust defined by the act, and the city did deliver 1,500 shares, all that she held at the date of the act, though she had subscribed, but had not paid, for, and did not actually hold, a greater number, and after 10 years the city sold to the state of Virginia a large block of shares, including some of the shares it had subscribed for but did not hold when the act of congress was passed, *held,* that the act was not sufficiently certain in its terms to convey constructive notice to Virginia of any equity the United States might have in a greater number of shares than 1,500, and that Virginia had a right after 10 years to purchase in good faith from A. any shares then owned by that city. *Held, also,* that although time does not run against the United States, and they are not prejudiced by the *laches* of public officers, yet equity will be unwilling to enforce the doctrine of constructive notice more than 40 years after the passage of a public statute in a case where stock purchased *bona fide,* claimed to be affected by the notice, has been held for more than 30 years.

By an act of May 20, 1836, (5 St. at Large, 32,) congress, after authorizing the secretary of treasury to assume the payment of certain bonds, respectively, of Georgetown, Washington, and Alexandria, which those cities had issued in aid of the canal which had been constructed from Georgetown to the town of Cumberland, in Maryland, provided that before the secretary should execute this duty "the corporate authorities of said cities should deposit in the hands of the said secretary the stock in the Chesapeake & Ohio Canal Company, held by them respectively; and that the secretary might, at such time within

ten years as should be most favorable for the sale of said stock, dispose thereof at public sale, and reimburse to the United States such sums as might have been paid under the provisions of this act, and if any surplus remained after said reimbursement, he should pay over said surplus to said cities in proportion to the amount of stock now held by them respectively." This was in reference to the stock of the three cities in the canal between Cumberland and Georgetown. In its river and harbor bill, passed on the third of March, 1837, congress inserted a section which enacted, in respect to the canal, extending the other from Georgetown to Alexandria, (5 St. at Large, 190,)—

"That when the corporate authorities of the town of Alexandria should deposit the stock held by them in the Alexandria Canal Company in the hands of the secretary of treasury, with proper and competent instruments and conveyances in law to vest the same in the secretary for and on behalf of the United States,—to be held in trust upon the same terms and conditions in all respects as the stocks held in the Chesapeake & Ohio canal by the several cities of this district were required to be held in and by virtue of the act of May 20, 1836, (above cited,)—then the secretary should be and he is hereby empowered and authorized to advance to the Alexandria Canal Company, from time to time, as the progress of the work might require the same, such sums of money, not exceeding $300,000, as might be necessary to complete the canal to the town of Alexandria."

This case requires only the latter act to be considered. At the time of its passage Alexandria held only 1,500 shares of the stock of the Alexandria Canal Company, and, upon a strict reading of the act, a deposit by the city of that number of shares was such a compliance with its literal terms as to entitle the canal company to receive the whole appropriation of $300,000. Alexandria had indeed at that time subscribed for a total of 3,500 shares, but she had paid for but 1,500 of them, and actually "held" only the latter number. Doubtless congress had contemplated the deposit of 3,500 shares, but the act did not expressly require the deposit of any other shares than those which Alexandria "held" at the passage of the act. Sometime afterwards that city subscribed for an additional 1,500 shares of the canal stock, thereby running up her total subscription to 5,000 shares. Soon after the passage of the act of March 3, 1837, Alexandria deposited with the secretary of treasury the 1,500 shares of canal stock which she then held; whereupon an installment of the $300,-000 was paid to the canal company; and afterwards, from time to time, the secretary of treasury paid over to the canal company the residue of the appropriation, without requiring of the city of Alexandria any further deposit of stock. Probably this was done in conformity with the literal terms of the act which failed to define the number of shares contemplated, and instead of requiring payments to be made *pari passu* with deliveries of stock by the city, required payments to be made to the canal company "as the progress of the work should require the same." All this transpired in the year 1837. The secretary did not call upon Alexandria to deposit, nor did the

city deposit, any other shares of the canal stock than the original 1,500 shares. Nor did the secretary, during the period of the ensuing 10 years, sell the stock which he had of the Alexandria Canal Company, to satisfy the trust for which he held it, as defined in the act first above referred to, of May 20, 1836, defining the purposes for which the stock should be sold. As before said, Alexandria, after March 3, 1837, acquired 3,500 shares of the canal stock, in addition to the 1,500 shares which she had deposited with the secretary of treasury. And no call having been made upon her within the period of 10 years within which the secretary was empowered to sell the stock in satisfaction of her indebtedness to the United States, she, in 1847, under an act of the general assembly of Virginia, (acts of assembly for 1846–47, p. 93,) passed March 1, 1847, exchanged 2,720 of the 3,500 shares of canal stock then held by her, with the state of Virginia, for bonds of the state to the amount of $272,000, the canal stock going into the custody and possession of the board of public works of Virginia, where it now is.

In 1881 a bill was exhibited by the United States in this court, against the city of Alexandria and the Alexandria Canal Company, demanding, among other things, a specific performance of what was alleged to have been the contract between Alexandria and the United States embodied in the act of March 3, 1837, which has been quoted above. The present proceeding is part of that suit. On all the proofs taken in the progress of that suit it was held, on final hearing, that congress in the act mentioned had contemplated the surrender of 3,500 shares of canal stock by Alexandria to the secretary of treasury, and it was decreed October 6, 1882, that the city was bound to deliver that number of shares. But it had been developed in that suit that Alexandria then held but 780 shares, having assigned and transferred the rest—2,720 shares—to the state of Virginia for valuable consideration. The 1,500 shares deposited in 1837 with the secretary of treasury, and these 780 shares delivered under the said decree of October, 1882, made up only 2,280 shares, leaving still due from Alexandria to the United States 1,220 shares. Her total subscription of 5,000 shares had gone,—first 1,500 shares, and afterwards 780, under decree, to the secretary of treasury, and 2,720 to the state of Virginia; making in all, 5,000 shares, and leaving none in her possession with which to supply the additional claim of the United States for 1,220 shares. Since the decree for specific performance entered October 6, 1882, the United States has filed its petition in this cause against the board of public works of Virginia, asking that that corporation, which has possession of the 2,720 shares of canal stock which it received from Alexandria in 1847, should be made party defendant in this suit, and required by this court to deliver 1,220 shares of the same to the secretary of treasury of the United States; the petition maintaining that the act of congress of March 3, 1837, affected the state of Virginia with notice of the trust

which bound that stock as defined in the act of May 20, 1836, and that the state, in equity and good conscience, should surrender the same to the secretary of treasury.

*Edmund Waddill*, U. S. Atty., and *H. H. Wells*, for the United States.

*Frank S. Blair*, Atty. Gen., for Board of Public Works.

HUGHES, J. I am now to pass upon the question of constructive notice as affecting the state of Virginia. I refer to my opinion delivered on the original hearing of this cause on October, 6, 1882, filed in the papers of the cause, and reported in 4 Hughes, 545; S. C. *ante,* 609, as showing the grounds on which I held that Alexandria was bound to deliver 3,500 shares of the canal stock in all, 2,000 in addition to those formerly deposited, to the United States. It will be seen that one of the questions at issue in that litigation was whether Alexandria, by depositing all the stock which she owned on the third of March, 1837, and at the time of the deposit, had not fully complied with the requirements of the statute? This was a pretension strongly supported by the fact that the secretary of treasury, by not having demanded a deposit of more than 1,500 shares, had seemed to adopt and act upon that view of the subject. But I held, on all the proofs, that the act had contemplated the deposit of 3,500 shares, and therefore that Alexandria was bound to make further deposit of the remaining 2,000 shares due. I also declared in that case, which declaration, however, was then but a *dictum*, that Virginia could not be required, even if she were a party to the suit, to return any part of the 2,720 shares which she had purchased from Alexandria in 1847. The ground of this declaration was stated to be that Virginia was not made cognizant of the fact of Alexandria not having an equitable right to dispose of as many as 2,720 shares of the canal stock as she did dispose of; that fact not having been brought home to the mind of the legislature of Virginia when it passed the act authorizing the exchange of state bonds for these shares, which was made.

Now that Virginia, in the corporate person of her board of public works, has been made a party to this suit, and that point is especially under litigation, and has been argued, I find no cause to change that opinion. Conceding, for the sake of argument, that the act of congress of March 3, 1837, being part of a public act, did affect Virginia with constructive notice that the shares then held by Alexandria in the canal company, when delivered to the secretary of treasury, would be liable to the trust defined in the previous act of May 20, 1836; yet it is certain that such notice only embraced the express contents of the act, and such other facts as, upon reasonable inquiry, were suggested or implied by the act. As an instrument of constructive notification, interfering with the freedom of commercial dealing, the act was to be strictly construed. Third persons could not be expected to know all its history,—all the considerations which inspired its passage,—and its relations to all the bonds of Alexandria Canal

Company, which at any time, however remote in the future, Alexandria might own; nor were third persons bound to look through a period of 44 subsequent years, and to anticipate the litigation instituted in this court in 1881, to determine how many shares of canal stock congress had intended that Alexandria should deposit with the secretary of treasury. The act gave notice that the stock then held by Alexandria should be deposited; inquiry would have developed that the number of shares then held was 1,500, and that these were deposited. The act gave notice that within 10 years from its date the secretary should sell all the stock which the act had required to be deposited; inquiry would have disclosed that after the expiration of the 10 years Alexandria held 3,500 shares, more or less of it possibly repurchased at the secretary's sale. The reasonable inference was that stock held after March 3, 1847, was not affected by the act of 10 years previous, nor by the trust which it defined and imposed. In short, it is plain to me that the act of March 3, 1837, was not such in terms, nor the proceedings of the secretary such, under it, as to convey notice to Virginia that any part of the 2,720 shares which she purchased in 1847 from Alexandria was affected by a trust which could invalidate her title. Indeed, as before suggested, that question was not actually settled, even as against Alexandria herself, until the decree in this cause, before mentioned as having been entered on October 6, 1882. Such being the state of things as to constructive notice, there is no proof that the legislature of Virginia, or her board of public works, had actual notice of the *status* of the stock which she purchased from Alexandria, in its relation to the congressional act of March 3, 1837. I believe it is not pretended by counsel that there was actual notice in any degree or form. Virginia is therefore an innocent and *bona fide* holder, for full consideration paid, of the whole 2,720 shares of canal stock now held by her board of public works. She has equitable title to it, and she has, besides, the legal title in and lawful possession of it.

Besides the foregoing consideration, it may be added that the deposit of stock provided for in the congressional act of March 3, 1837, was an executory contract. The trust established upon the stock was not to attach until it had been actually deposited, "with proper and competent instruments and conveyances in law to vest the same in the secretary of the treasury." Until so deposited and legally transferred, Alexandria, though bound in equity to deliver a certain portion of it to the United States, was in law at liberty to transfer and sell it, and make good title to it to any *bona fide* purchaser for valuable consideration who was not cognizant of her obligations respecting it. As the case stands, the United States has an equity to have 1,220 shares of the canal stock once owned by Alexandria transferred to the secretary of treasury, unless they have lost their equity by sleeping for more than 40 years upon their rights. On the other hand, Virginia has an equity to have the whole 2,720

shares of the stock which she purchased in good faith and without adverse notice, from Alexandria, and has also the legal title derived by legal transfer, and by quiet possession of more than 30 years. Her right therefore must prevail.

Entertaining these views on the merits of the case, it was useless for me to go into the question of jurisdiction raised at bar, or into the question how far governments and states are bound by the *laches* of their public offices, or by the lapse of time.

The petition of the United States must be dismissed.